FILED

2016 Mar-21  PM 03:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **KENNETH WAYNE DUNKIN,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Civil Action No.: 2:14-CV-2080-RDP** |
| } | |
| **CAROLYN W. WILSON,** } | |
| **Acting Commissioner of Social Security,** } | |
| } | |
| **Defendant.** } | |

**<u>MEMORANDUM OF DECISION</u>**

Plaintiff Kenneth Wayne Dunkin brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") which denied his claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g), 1383(c). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.    Proceedings Below**

Plaintiff filed applications for disability, DIB, and SSI benefits on December 21, 2011, alleging a disability onset date of December 19, 2011. (R. 142-203). Plaintiff's applications were denied on January 27, 2012. (R. 74-75, 80-89). On February 17, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 91). Plaintiff's request was granted (R. 110, 116), and a hearing was held on February 14, 2013. (R. 30-55). Plaintiff and a

Vocational Expert, Dr. David Head, presented testimony during the hearing.  (R. 30).

On March 27, 2013, the ALJ entered her decision (R. 16-26).  The ALJ found Plaintiff was not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (R. 26).  Plaintiff requested review of the ALJ's decision on April 8, 2013.  (R. 14, 15).  On August 26, 2014, Plaintiff's request was denied (R. 1), and on October 27, 2014, Plaintiff filed a complaint in this court.  (Doc. #1).

## II.    Facts

At the time of the hearing, Plaintiff was 57 years old and had a high school education. (R. 35).  Plaintiff's past work experience includes that of a pharmaceutical courier, security guard, lubrication servicer, tire technician, warehouse worker/material handler, and forklift operator.  (R. 170, 188-94).  Plaintiff alleges an inability to function or work as of December 19, 2011 due to seizures.  (R. 56).  Plaintiff testified that he was diagnosed as having seizures when he was in the seventh grade.  (R. 39).  He referred to them as "staring spells . . . like flipping a light switch on and off for a few seconds" and explained that he sometimes experiences these "staring spells" four or five times each day.  (R. 38).  Plaintiff has difficulty going to sleep and staying asleep.  (R. 178).  He is tired constantly but still unable to sleep.  *Id*.  He frequently has seizures during his sleep, waking him up, and will end up catnapping throughout the day.  (R. 38).  Because he does not sleep well, approximately three times each week Plaintiff takes naps (once or twice during the day) for thirty minutes to an hour.  (R. 45-46).

Plaintiff further testified that once he has a seizure, he is confused for a few hours and his memory "kind of goes out the window."  (R. 38).  Plaintiff claims the confusion has gotten worse as he has gotten order.  *Id.*  Plaintiff loses his concentration and has to go back and read a line or

paragraph over a number of times.  (R. 43, 181-82).  Further, he will "shudder" and feel like he is going to fall.  (R. 43).  However, when he is not having a seizure he functions normally.  (R. 58).

Plaintiff testified that he experienced a grand mal seizure in December 2011 and was admitted to the hospital.  (R. 39).  After experiencing the grand mal seizure, Plaintiff quit his job as a pharmaceutical courier, has not worked since, and (though not told to do so) stopped driving.  (R. 41).  He has suffered no other grand mal seizures since the end of 2011.  (R. 39).  Plaintiff is prescribed Depakote to control the grand mal seizures but is not taking any other medication.  (R. 40).  He testified that he experiences no major side effects from taking Depakote, which he says has been controlling the grand mal seizures but has not stopped the staring spells.  *Id*.  Prior to the grand mal seizure and being prescribed Depakote, Plaintiff would get mad at people.  (R. 42, *see* 183).  In a Disability Determination Explanation, it was noted that Plaintiff's family members feel he is bipolar.  (R. 58).  Prior to filing for disability benefits, Plaintiff worked, drove, and could be in noisy crowds such as shopping or sporting events without become anxious.  (R. 178).

During the hearing, the ALJ asked Plaintiff if he has any problems with standing, walking, sitting, kneeling, crouching, crawling, lifting or carrying things.  Plaintiff responded in the negative.  (R. 43-44).  However, if experiencing a seizure, Plaintiff stated he would drop anything he was carrying and, if bending, would fall over.  (R. 44).  Depending on how much sleep he gets, Plaintiff's hands sometimes shake, which he was told is from the seizures he has had over the years.  (R. 45).  Plaintiff alleges his seizures have affected his hearing.  He reported usage of his deceased father-in-law's hearing aid in his right ear; however, he hears normal conversation from his left ear.  (R. 58, 181).

The Vocation Expert ("VE") testified that Plaintiff's past work as a courier,[1] lifting up to 50 pounds, was considered light, unskilled work; his work as a security guard as light, semi-skilled; his work as an oil servicer or lubrication servicer as medium in exertion, semi-skilled; his work as a tire technician as medium in exertion, skilled; his work as a warehouse material handler, loading and unloading, lifting up to 100 pounds, as heavy, semi-skilled; and his work as a forklift operator, semi-skilled -- though performed in 1997 and before -- as medium in exertion. (R. 48-49).   Based on hypothetical questions outlining certain criteria and limitations, when asked if Plaintiff would be capable of performing any of his past work either as he actually performed that work or as those occupations are generally performed in the national economy, the VE responded that Plaintiff could perform his past work as a security guard.  (R. 49-50). When asked if there were any additional occupations that Plaintiff would be capable of performing, the VE responded that Plaintiff would be able to work as a laborer in a store, and could perform cleaning jobs and packaging jobs.

## III.    ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the

---

[1] Plaintiff testified that when working as a pharmaceutical courier, he had a regular driver's license – not a CDL license.

claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.   If such criteria are met, the claimant is declared disabled.  20 C.F.R.  § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the first step of the analysis, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since December 19, 2011, his alleged onset date of disability.  (R. 21).  By reviewing acceptable medical evidence of Plaintiff, including signs, symptoms, and laboratory findings, at step two of the analysis the ALJ determined that Plaintiff has the severe

impairment of seizure disorder. *Id.* The ALJ found this severe impairment constitutes more than slight abnormalities and has resulted in more than a minimal effect on Plaintiff's ability to perform a full-range of work-related tasks for a continuous period of twelve months. *Id.*; 20 C.F.R. §§ 404.1520(c), 416.920(c). After considering section 11.03 of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ found that the evidence does not establish non-convulsive epilepsy (petit mal, psychomotor, or focal). Further, aside from the initial report of an Echocardiogram performed on December 19, 2011, the ALJ found no indication that Plaintiff's mild pulmonary hypertension resulted in significant persistent limitations to his ability to perform work-related tasks. (R. 21-22). With regard to Plaintiff's history of bipolar disorder and panic attacks, the ALJ relied on Dr. Robert Estock's report that Plaintiff had neither been treated by an acceptable medical source nor been referred to seek any treatment for mental health issues, and in doing so found Plaintiff does not have any medically determined mental impairment. (R. 22). As to Plaintiff being hard of hearing and experiencing hand shaking (causing him to drop items) the ALJ found the record devoid of any medically acceptable evidence, including signs, symptoms, and laboratory findings from a regulatory medically acceptable source to establish these alleged conditions as medically determined impairments. *Id.*

Because Plaintiff's impairments have not been shown to impose limitations as mentioned in the listings, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (R. 22). The ALJ further determined that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the following non-exterional limitations: Plaintiff can occasionally stoop and climb ramps and

stairs; never climb a ladder, rope, and scaffolding; occasionally balance on uneven terrain; can never work around hazardous machinery, at unprotected heights, perform commercial driving, and be around large bodies of water; and can occasionally be exposed to extreme heat.  (R. 23). In sum, the ALJ determined Plaintiff is capable of performing past relevant work as a security guard.

## IV.    Plaintiff's Argument for Reversal

Plaintiff's position on this appeal is that the decision of the Commissioner is not supported by substantial evidence and is contrary to the law; therefore, he contends the Commissioner's decision is due to be reversed. Within this broad argument, Plaintiff specifically argues that the ALJ did not properly consider Plaintiff's subjective complaints.  The court finds Plaintiff's arguments are without merit.

## V.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI.    Discussion

After careful review, the court concludes that the ALJ's findings are supported by substantial evidence and that the ALJ applied correct legal standards.

### A.    The ALJ Gave Proper Weight to Plaintiff's Subjective Testimony and Properly Considered Plaintiff's Claims.

Plaintiff alleges that the ALJ "arbitrarily" discounted his subjective complaints and that objective medical evidence confirms his complaints. (Pl.'s Mem. 8-9). The court disagrees. The ALJ articulated valid reasons for finding Plaintiff not fully credible (R. 23-24), and substantial evidence supports the ALJ's findings. *See Allen v. Sullivan*, 880 F.2d 1200, 1202-03 (11th Cir. 1989) ("If an ALJ rejects a claimant's testimony regarding pain, he must articulate specific reasons for doing so.").

An ALJ must rely upon substantial evidence in discrediting a claimant's subjective pain testimony. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). If an ALJ fails to do so, as a matter of law, she has accepted the claimant's subjective pain testimony as true. *Id.* When a claimant attempts to prove disability based on his subjective complaints, he must provide evidence of an underlying medical condition and either objective medical evidence confirming

the severity of his alleged symptoms or evidence establishing that his medical condition could be reasonably expected to give rise to his alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b); SSR 96-7p, 61 Fed. Reg. 34, 483-01 (July 2, 1996); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms, but the claimant establishes he has an impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. § 404.1529(c), (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26. In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

In this case, the ALJ cited three main inconsistencies between Plaintiff's testimony and the objective evidence included in the record. (R. 23-24). First, although Plaintiff has had a history of seizure disorder since childhood (R. 39, 227), he has been able to maintain substantial gainful activities for many years despite that impairment. (R. 24, 161-64, 188-94). The fact that Plaintiff was previously able to work with his impairment weakens the credibility of his statements regarding the severity of his symptoms. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (noting that a claimant's ability to work for several years despite his impairment was a valid consideration when determining that a claimant was not disabled).

Second, State agency physician Dr. Robert Heilpern opined that Plaintiff is only partially credible because Plaintiff's statements regarding his daily functioning do not support the Plaintiff's alleged level of severity. (R. 61, 70). Because State agency physicians are "highly

qualified physicians . . . who are also experts in Social Security disability evaluation," an ALJ must consider their opinions. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). "The more consistent a physician's opinion is with the record as a whole, the more weight an ALJ should place on that opinion." *Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. App'x. 869, 873 (11th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(4)). As noted by the ALJ, Dr. Heilpern's medical opinion is consistent with the available treating source records (R. 24); therefore, the ALJ was entitled to rely upon Dr. Heilpern's opinion in determining the scope of Plaintiff's impairments. *See Jarrett*, 422 Fed. App'x. at 873.

Third, Plaintiff's medical noncompliance (*i.e.*, not taking his prescription medication) undermines his allegations regarding the severity of his symptoms. *See Ellison*, 355 F.3d at 1275-76; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Plaintiff alleges that the ALJ's consideration of Plaintiff's noncompliance in taking his prescribed medication was improper. (Pl.'s Mem. 11-13). However, because the ALJ assessed a number of factors -- including but not limited to those discussed above -- when evaluating the severity of Plaintiff's symptoms, the court concludes her decision is not significantly based on Plaintiff's medical noncompliance. *Ellison*, 355 F.3d at 1275 (finding that an ALJ's attention to a claimant's medical noncompliance was permissible as long as the ALJ's ultimate decision was not "significantly based" on this noncompliance). Therefore, the ALJ's consideration of this factor was not erroneous. *See id.*

The objective medical evidence contradicts the alleged severity of Plaintiff's symptoms and supports the ALJ's conclusion that Plaintiff was not fully credible. (R. 23-24). As such, this court will not disturb the ALJ's clearly articulated finding. *See, e.g.*, *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (explaining that when the ALJ's determination is based on substantial evidence, a court should uphold that decision); *Wilson v. Barnhart*, 284 F.3d 1219,

1226 (11th Cir. 2002) (same).  The ALJ gave proper weight to the evidentiary matters challenged by Plaintiff.

> **B.      The ALJ's Decision Is Based on Substantial Evidence.**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence when considering the record as a whole.  (Pl.'s Mem. 2).  This court finds that just the opposite is true.

A reviewing court considers the record as a whole to determine whether the ALJ's findings are supported by substantial evidence.  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1266 (11th Cir. 2007).  When alleging a disability, a claimant bears the burden in establishing his disability.  *See Doughty v. Apfel*, 245 245 F.3d 1274, 1278 (11th Cir. 2001) ("The burden is primarily on the claimant to prove that he is disabled . . . .") (citing 20 C.F.R. § 404.1512(a)).  Here, Plaintiff has not met that burden as the objective medical evidence supporting his alleged disability is contrary to Plaintiff's testimony.

Plaintiff primarily relies on the credibility of his testimony and his handwritten calendar entries which purport to document the frequency of his seizures.  (R. 207-16).  (Pl.'s Mem. 8-11).  As previously discussed, substantial evidence supports the ALJ's conclusion that Plaintiff's testimony is not fully credible.   Without supporting objective medical evidence, Plaintiff's handwritten calendar alone does not (and cannot) establish that Plaintiff is disabled.  *See, e.g.*, *Osborn v. Barnhart*, 194 Fed. App'x. 654, 664 (11th Cir. 2006) ("[T]here must be medical signs and laboratory findings showing a medical impairment(s) which could reasonably be expected to produce the . . . symptoms alleged, and, when considered with other evidence, would lead to a conclusion that the claimant is disabled.") (citing 20 C.F.R. § 404.1529(a)); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Indeed, a review of the record shows that Plaintiff's claims are not supported by objective evidence in the record.

When evaluating Plaintiff's limitations due to his seizure disorder, the ALJ relied on objective medical evidence included in the record, such as the medical opinion of Dr. Heilpern, who found Plaintiff not disabled (R. 64, 73); the medical notes of Dr. Merwat Sheharyar, who noted that Plaintiff had not been taking his prescribed medication for approximately two years (R. 227, 229); and clinical progress notes on Plaintiff, which documented that Plaintiff was not taking his medication (R. 255).  (R. 23-24).   Additionally, among other factors, the ALJ considered Plaintiff's past work history despite his seizure disorder (R. 161-64), and the VE's testimony, which indicated that Plaintiff would be able to perform past work as a security guard (R. 50-53).  (R. 24-26).  This objective evidence outweighs Plaintiff's subjective testimony and handwritten calendar notes.  Considering the record in its entirety, substantial evidence supports the ALJ's findings.  Accordingly, the ALJ's findings are conclusive. *See* 42 U.S.C. § 405(g); *Martin*, 894 F.2d at 1529.

**VII.   Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this March 21, 2016.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE